Mr. Dworetsky? Mr. Chief Justice, and may it please the Court, in the wake of the nation's failed experiment with Prohibition, the 21st Amendment restored to the states the powers that they previously had under the Wilson and Webb-Kenyon Acts. In exercising those powers, both before Prohibition and in its immediate aftermath, states enacted residency requirements, like Tennessee's, to regulate the sale of alcohol within their territory. All along the way, this Court recognized the states' power to do so as part of their virtually complete control over how to structure the liquor distribution system. Under Granholm, that unbroken and undisputed history is dispositive. Residency requirements, like Tennessee's, are protected from dormant Commerce Clause scrutiny, because they were authorized by the Wilson and Webb-Kenyon Acts and uniformly considered constitutional at the time of ratification. Respondents offer to the Court the right of the State to decide whether or not to regulate the sale of alcohol within the state. Sotomayor, if I could ask you to clarify for me your position. Justice Sutton, in his dissent, basically said, if your legislature came and said, we don't want out-of-state wholesalers, distributors, or retailers to be in our chain of distribution, because they're going to take business away from our local enterprises. Period. End of story. Are you saying that the State can do that? Are you disagreeing with Justice — with Judge Sutton? Or do you think that there's an economic protectionism — protection against what a State can do? So I don't think that there is an economic protectionism exception to the 21st Amendment. But even if there were one, as Judge Sutton recognized in applying his test to the 2-year residency requirement in this case, we would still prevail. Well, except we have a difficulty there, which is you can't look at legislation piecemeal. You have to look at it as a whole. It was written as a whole. It's one paragraph that says 2 years plus 10. So it's really 12 years, because — and he said there's no economic justification for a 10-year residency requirement. So what you have to look at is not whether it's 2 years, but whether there's any reason for a 12-year residency requirement. And if she said no to 10, then it's no to 12. So, Justice Sotomayor, that gets us into a severability question. And — But let's go back to my initial question. Yes, it does. And that's a separate question. And you can argue that one back and forth. But my fundamental question is, the — you believe the 21st Amendment permits States to discriminate against out-of-State interests. Then does that mean Baucus, Granthold, all our jurisprudence that has invalidated certain State laws was wrong? Is that — are you suggesting we should just disavow all those cases and forget them? No. No, we're not. And let me address both Baucus and — I know you want to limit it to producers, but that's not the way that Granthold talked about them — talked about this issue. But you can slice and dice as much as you want. But is it your position that the 21st Amendment makes all of our other jurisprudence wrong? No, it's not. And let me explain how to harmonize it. Granthold — Granthold mandated a historical test. The question in Granthold which all nine justices agreed upon was, what were the States' pre-prohibition powers? Now, the disagreement in Granthold was about whether States could discriminate against out-of-State products pre-prohibition. But the framework was not an economic protectionism framework. It was a historical question. But they could — can I come back to the — where I thought Justice Sotomayor started, and ask you just very simply, can a State enact a 10-year residency requirement? And if not, why not? There would not be a dormant commerce clause problem with a 10-year residency requirement. There might be some other constitutional challenge to that, but it would be immune from dormant commerce clause scrutiny as long as it treated in-State and out-of-State products the same. Okay. Suppose if it was a grandparent's requirement. So you can't — you can't get a liquor license in Tennessee unless your grandparents were Tennessee residents. That would not create a dormant commerce clause problem? It would not create a dormant commerce clause problem because the whole point of the 21st Amendment was to constitutionalize the pre-prohibition powers, which included the power to discriminate against out-of-State interests. If you think about the three-tier system and the in-State wholesaler requirement, for example, that this Court in Granholm itself said was unquestionably legitimate, that discriminates against out-of-State interests. Okay. I mean, just to understand the contours of your argument, to pick up on something else Justice Sotomayor referred to, suppose you have a State statute that says for the exclusive purpose of protecting in-State retailers, no — you must be a resident of the — of the State for two years, five years in order to get a license. Would that be — would that be constitutional? I still don't think there would be a dormant commerce clause problem with that. Now, under Bacchus, if you're looking at the language in Bacchus, Bacchus does talk about economic protectionism, but it does so in the context of a case that was discriminating against out-of-State products. If the rule from Bacchus— Wholesalers. Bacchus, Bacchus. Well, it involved wholesalers, but it involved a tax — it involved a tax exemption that applied only for in-State products rather than out-of-State products, and that the tax was collected through the wholesalers. Yeah, that's the problem. I don't know why, under your theory of the dormant commerce clause, if the State can do what it wants within its borders because it's regulating liquor, I don't know why our cases would be right under your theory that they can't put a different tax on different products. Because under Granholm and under the history pre-prohibition, States could do virtually what they wanted within their borders, but not everything, and one important carve-out, and this is reflected in the text of the Wilson Act itself, is that they had to treat in-State and out-of-State products the same. The Wilson Act itself says, this is in the blue brief at page 26, it's 27 U.S.C. 121, that States have the power to ban the importation of liquor as long as they treat, in violation of laws in the exercise of its police powers within the State, as long as they are treating liquor to the same extent and in the same manner as those such liquors had been produced in the State or territory. So the pre-prohibition powers Then Sifrin was wrong, one of the cases you rely on, because Sifrin was really the counter to Bacchus, wasn't it? And Sifrin basically said, you can discriminate in terms of taxes, basically. But not based on products. And the key point from Bacchus was that it was about discrimination based on products. If the rule that came out of Bacchus were just a straight economic protectionism test, Granholm would have been a much easier case. Granholm could have been written by saying, the question is, do the Michigan and New York laws at issue, are they meant to protect in-State producers or not? That wasn't the analysis that Granholm used. Instead, again, Granholm set forth this historical test that required the Court to look back at the pre-prohibition powers. And the Wilson and Webb Kenyon Acts, first of all, empowered States to regulate interstate shipment of alcohol so long as they treated in-State and out-of-State alcohol the same. And then second, at that time, pre-prohibition, States also had the inherent authority to regulate in-State sales. So combined, that meant that States pre-prohibition were free to structure the in-State liquor distribution systems, free from Commerce Clause scrutiny, again, as long as they treated in-State and out-of-State products. Breyer. Does it apply to Commerce Clause? I mean, if you go back to 1920, maybe they said it can only be sold on the basis of race or the basis of gender or something. I mean, it can't be a hundred percent whatever they did in 1920. Well, that's right, but that's because the 21st Amendment and the pre-prohibition powers that we're talking about are powers related to overriding the dormant Commerce Clause specifically, not other constitutional provisions like the First Amendment or prohibitionary funds. Now, we know that the – in other words, your position, your view is all the other amendments apply, okay. The Commerce Clause applies, too, as long as it wasn't part of the distribution system in the Wilson Act. And that – But if it's part of the distribution in the Wilson Act, then it's free of Commerce Clause, but otherwise it's subject to it, and it's also subject to everything else. Is that basically – have I got it basically right? No. I wouldn't quite say we're looking at the distribution system pre-the Wilson Act, but the Wilson and Webb Kenyon Acts, which were constitutionalized in the 21st Amendment, were all about permitting States to act in ways that did restrain Commerce, but they weren't about permitting States to act in ways that violated the First Amendment or other, you know, individual rights, for example. And so – And you're wrong, because the law then did provide for racial discrimination, and there is nothing in the provision that limits itself to the Commerce Clause. It just says the transportation or importation into any State, territory, or possession of the United States, for delivery or use therein of intoxicating liquors in violation of the laws thereof, is hereby prohibited. I don't actually see in that any reference to the Commerce Clause or to any other limiting principle, yet we have cases that have found limiting principles. Yes, but this Court's cases, including the ones that have found limiting principles and Granholm itself, all explain that the 21st Amendment has to be understood in light of what it was trying to achieve, which was constitutionalizing these statutes. And these statutes were dealing with Commerce, notwithstanding their broad language. The problem that they were trying to solve and the State powers that they were trying to protect were related to powers because – Sotomayor Let me ask something about that. I do understand that the 21st Amendment was geared towards giving States greater freedom in controlling the distribution and sale of liquor in their jurisdiction. But I'm having a hard time understanding how the residency requirement does when it comes to a person's preexisting residency. So, yes, we understand that having someone there who's responsible to the community is necessary. That was inherent in the three-tier system. But why is it inherent in the three-tier system that you have to have someone who's only a local do it? There are many States whose three-tier system doesn't require that. They function fairly well. I don't understand the necessity of that. So, first, I don't think the question is whether it's necessary or not. The point of the 21st Amendment is that courts aren't supposed to impose that kind of scrutiny. States get to decide what distribution system works within their State. There's no one-size-fits-all solution. Sotomayor I agree, but there are some parts of the discrimination part of the Commerce Clause that we say still affect this. You're saying they can't use it to violate the First Amendment. We've said you can't use it to discriminate against products, although nothing in here says you can't do that. I'm having a hard time understanding. Explain to me why it's necessary. Let me make two points. One, just quickly going back to your earlier question about the text of the 21st Amendment, the text does refer to the delivery or use of alcohol. So that is invoking the sort of Commerce Clause concern that the history confirms. But to get to your other question about the purposes of a durational residency requirement, everybody agrees that a residency requirement of some sort is constitutional, notwithstanding that it would otherwise raise Commerce Clause concerns. And the durational component of a residency requirement serves very much the same interests. For example, residency requirements are important because they allow States to conduct background checks. Having somebody be a resident for a longer period of time allows the those who decide whether to issue licenses to actually observe the person and to observe the person's character and give the State a better ability to decide whether to issue a license and to conduct a background check. Likewise you're arguing that they serve a public health and safety purpose. But I thought you answered my previous question by saying it doesn't matter if the only purpose of the regulation, and this is spelled out right in the statute itself, is economic protectionism. That does not create a dormant Commerce Clause problem because the 21st Amendment gave the States that authority. So I think that's right. I think there's no historical pedigree for an economic protectionism sort of exception. If the Court were to engage in that, it would essentially be a standardless inquiry. Well, I think you're turning – maybe you're turning it around, and maybe my understanding of history is wrong, so you'll correct me. But I thought that the purpose of the 18th Amendment was a determination by those who adopted it and ratified it that alcohol created a public health and safety problem. And I thought the purpose of the 21st Amendment and Section 2 of the 21st Amendment was to say this is a determination, the public health and safety determination is not going to be made on the national level. It's going to be made by the States. But none of that seems to me to have anything to do with economic protectionism. But where am I wrong in that? What is the – what is the basis for thinking that the purpose of – or a purpose of Section 2 of the 21st Amendment was to authorize the States in this one area, dealing with alcohol, to engage in protectionist activities that wouldn't be permitted with respect to any other commodity? I don't think the purpose was specifically to allow protectionist activity. But I do think that the purpose was to shield State laws from scrutiny under the Dormant Commerce Clause. And for sure, one way that States might exercise that authority would be economic protectionism. But there's no historical pedigree for that kind of a carve-out from what is otherwise virtually complete authority for States to legislate in this area, free from Dormant Commerce Clause scrutiny. If the – When you say virtually complete authority, and you've said several times the point of the 21st Amendment, the purpose of the 21st Amendment, the problem that I'm having in thinking about this is the text of the 21st Amendment does not support that as I read it. You mentioned delivery or use, but it doesn't just say that States have complete authority over delivery or use. It's talking about the transportation or importation in any State. And why isn't that most naturally read to allow States to remain dry and therefore ban transportation or importation, but not to otherwise impose discriminatory or, as Justice Alito says, protectionist regulations? Two points in response to that, Justice Kavanaugh. First, the 21st Amendment has to be read against the backdrop of the inherent authority that States already had to regulate the distribution systems within their system. The 21st Amendment didn't need to say that expressly because it was understood at the time. Second, this Court in Midcow said – I'm going to stop you there. I'm sorry. Where do you get that idea that it somehow – the backdrop was to give the State's authority to enact protectionist legislation or legislation that discriminated against out-of-State producers, retailers, wholesalers? So I direct you to Judge Sutton's dissent in the Sixth Circuit, which walks through the understanding of State authority. I've gone through all that, and I don't see that in the Webb-Kenyon Act. The things that led up to that were not – the Act was not, as I understood it, enacted to enable States to enshrine protectionist legislation into State law. Those statutes were enacted in order to avoid circumvention of certain inherent State powers by importing products into – When they wanted to remain dry States, as I understood it. But when the 21st Amendment was enacted, obviously that was the end of prohibition. But it also restored to the States powers that they previously had to regulate – regulate authority within their borders. I'd also direct the Court to Midcow – this is at 445 U.S. at 106, which said that although the 21st Amendment on its face gives the States control over the transportation or importation, such control logically entails considerable regulatory power not strictly limited to importing and transporting alcohol. That, too, is referring to the Court's – to the States' inherent power to regulate the systems within their States. If I may reserve the remainder of my time. Roberts. Thank you, counsel. General Franklin. Mr. Chief Justice, and may it please the Court. This Court has repeatedly stated, most recently in Granholm itself, that Section 2 of the 21st Amendment gives States virtually complete control over how to structure their domestic liquor distribution systems. Now, questions have obviously arisen already this morning about whether residency requirements were part of that structure, and they were. We know that, for example, from the Vance case in 1898. The Court's discussion there is very instructive. Vance involved the South Carolina dispensary law. But the Court there said the dispensary law was comparable to a situation in which a State required for a retail license that the retailer be a resident of that State. And the Court treated that situation as so self-evidently valid that it used that as the basis for upholding the South Carolina law by saying any rule that would question that just couldn't be the law. Mr. Franklin, you're representing quite a number of States, including Tennessee, I guess, maybe. These States have very varying residency requirements. And I want to take you back to Justice Alito's question. Tennessee appears to be on one end of the spectrum. And is there anything in your argument that would give us a way to say, you know, when there's a 12-year residency requirement, when there's a 100 percent shareholder requirement, these have stopped being public health and safety measures. These are clearly protectionist. And we should not allow those to occur. Well, I agree with my co-counsel that there wouldn't be a dormant commerce clause claim there, because the 21st Amendment, as he stated, was designed to supplant or displace dormant commerce clause analysis. Now, there may come a point where the residency requirement is so extreme or so excessive as to be truly arbitrary, and then it could fail the 14th Amendment's background presumption. Well, it's not arbitrary if you are intending to promote economic protectionism. And as I understand your position, it's that that's part of the State's prerogatives too. And then, you know, the sky's the limit. The more you do, the more protectionist it gets. Well, for example, it's our position in this case that the interplay between the initial 2-year residency requirement for a license under Tennessee law and the 10-year renewal requirement, it's hard to see a rational basis for that. It seems like a trap for the unwary. That's not a dormant commerce clause problem, but it could be a violation of the background rationality, minimal rationality requirement of the 14th Amendment. Why is that, to pick up on Justice Kagan's question? Economic protectionism is rational. It's in certain circumstances, it's disputed, but it's rational. It may be a dormant commerce clause problem. And you're saying, no, it's no dormant commerce clause problem. Then it would seem — I'm repeating Justice Kagan now — the sky's the limit. My comment went simply to the interplay between the initial requirement and the subsequent requirement. Yeah, but 12 years, no dormant commerce clause problem, you said. And the rationality argument would be that it's designed to favor in-State retailers. That's rational. Our position would simply be that at some point down the line, there could be a failure of minimal rationality. But that's certainly not the case with respect to the 2-year requirement. General, I guess the question is, if you're conceding that much, what's the delta — what's the difference between what the dormant commerce clause would otherwise disallow and what I take it to be your position the Equal Protection Clause would permit? If it's irrational under one, why is it rational under the other? And are we just going to recreate our dormant commerce clause jurisprudence elsewhere? Well, I do think it would be a mistake to recreate the dormant commerce clause elsewhere because — Presumably. Right. But why? Isn't that exactly the invitation you're issuing us through this concession? I don't think so. All legislation is subject to the Fourteenth Amendment's background requirement of minimal rationality. We don't think we're close to that here. And the protectionism lens is just the wrong lens through which to look at this issue. So suppose you — law. Any liquor store has to use paint made in Tennessee. Asphalt made in Tennessee for the parking lot. Neon. You know, I can go on. I suppose at some point if we're talking about the use of paint, then we're really getting pretty far afield from the State structuring the in-State distribution of sales. I would say there's just as good a reason for saying the out-of-State owner has to be a — live here for 12 years as there is to say paint. In fact, a better reason because Tennessee paint's really good. But the statute here, Your Honor, goes to the question of who can sell to whom and on what terms. That's always been at the heartland of what the 21st Amendment was meant to protect, the State's ability to structure the intra-State sale of its product. Kagan. I guess, Mr. Franklin, a question that followed from my last is, wouldn't it be a better idea if we said the Dormant Commerce Clause does apply and then let the State come back and say we can meet that test, we have real health and safety concerns here and our law is well tailored to address those concerns. And so it's not a Dormant Commerce Clause violation. I think that approach, which is essentially Judge Sutton's approach, would still embroil the courts in the kind of line drawing that the 21st Amendment was designed to relieve them of by creating what this Court has called an exception to the normal operation of the Dormant Commerce Clause. It would be at odds with the broad regulatory discretion that's conferred by the 21st Amendment. But I think it's important to note also that the Respondent's approach, which is not that approach, right, their approach says no discrimination of any kind under the 21st Amendment, and that approach really would leave the 21st Amendment with no meaningful role to play in our modern constitutional order. Think about the three-tier system for a moment. This Court described it in Granholm not only as unquestionably legitimate, but also as involving sales to and purchases from an in-State wholesaler. Now, that arrangement disadvantages out-of-State business interests. It wouldn't fly if we were talking about milk or trash. But this Court has treated it as unquestionably legitimate because it's part of the State's choice about how to structure the in-State sale of this particularly dangerous product that has distinctive constitutional treatment under the 21st Amendment. In the end, Respondents are asking this Court to treat alcohol like any other article of commerce, but it's not. It was actually 100 years ago today that the 18th Amendment was finally ratified, and 14 years after that failed experiment, the 21st Amendment restored to the individual States their broad police powers over delivery and sale of this product within their borders, so long as they treated out-of-State and in-State products the same. And that proviso comes directly from the text of the Wilson Act, which was Congress's instruction as to how and to what extent to overturn this Court's decision. And that was the line Congress drew, and no further. Granholm drew the same line. It said, we're not going to import all of the dormant Commerce Clause's nondiscrimination principles into the 21st Amendment, but we are going to import so much of it as the historical analysis and the Wilson Act require. As Justice Kavanaugh pointed out in an earlier question, the 21st Amendment is about the transportation or importation of alcohol into a State. How do you get from there to a durational residency requirement that is imposed on the owner of a retail outlet in the State? Suppose I am not a resident of Tennessee and I want a license to operate an entity that will sell only Tennessee whiskey.  Well, if I can quote from Midcow in the way that my colleague was beginning to do, what the Court said there is very instructive. It said, yes, in terms, the amendment gives States control over transportation and importation, but of course, such control, I'm quoting still, logically entails considerable regulatory power not strictly limited to importing and transporting alcohol. It's true, in other words, that the 21st Amendment speaks of importation, though it also speaks of delivery and use. But it does so. Alitoson It speaks of transportation for the purpose of delivery or use. Breyer For the purpose of protecting the State's ability to control the terms on which delivery or use will take place within its borders, and that's exactly what's at issue here. The 21st Amendment, in other words, presupposes and safeguards the State's broad control over intrastate distribution and sale. And this Court has said that repeatedly. Granholm and Bacchus are not to the contrary. What they do is undertake a historical analysis and recognize a proviso to that. But the broad rule still stands. States have virtually complete control over intrastate distribution and sale. Roberts Thank you, General Franklin. Mr. Phillips.  Phillips I'd like to start with the history, because it seems to me that there's a fundamental difference here, and this Court actually has answered the question of what the history of the Wilson Act, the Webb-Kenyon Act, and the 21st Amendment was designed to get at. And the language of the 21st Amendment speaks directly to exactly what the purpose of this entire exercise was. The problem that the two Federal statutes were designed to deal with was the fact that sale of alcohol within our states, and had absolutely no authority to stop the import from other states of alcohol. In the first instance, in the original package doctrine, they could sell it to retailers, and then ultimately, beyond that, they could sell it directly to consumers. And the statutes were passed to stop that specific practice. And then we go to the prohibition, which as somebody already noted, is exactly 100 years ago today. And then we come back, and we repeal the prohibition. And the language in Section 2 tracks very closely the language and the intention. It's not a grant of authority. It's a protection against allowing out-of-state operators to come in and sell directly to liquor under certain circumstances. That was the entire purpose of it. That's what the Court held in Bacchus, and that's what the Court held in Granholm. Bacchus said it was not the, I'll quote it, doubts about the scope of the amendment's authorization, Section 2. Notwithstanding, one thing is certain. The central purpose of the provision was not to empower states to favor local liquor industries by erecting barriers to competition. Candidly, I don't know that the Court had to go past Bacchus when it decided Granholm, because those statutes were clearly just as economically protectionist as this one is. But the principle from Bacchus is, if a statute has no purpose, and this statute has no purpose, except to be protectionist of the local industries, it's unconstitutional. Is that your standard? Because you seem to slide back and forth a little bit between standards in your brief, or I thought that you did maybe. If a state can come forward with any purpose other than protectionism, the state wins? No. No, it's when the state doesn't come forward with anything except protectionism, the state loses. But suppose the state comes forward and says, we like this because it's protectionist. We were trying to do some protectionist things. And we also, coincidentally, we found a way that our protectionist interests matched up completely with our health and safety interests. What happens then? Then you're in Granholm. And that's what, I mean, Granholm, I think, could have concluded anyway, that the statutes involved there were really just economic protectionism and not gone beyond that. But it did go beyond that. And what it said is, if, in fact, the state is engaged in discrimination, under normal Commerce Clause standards, it's presumptively unconstitutional. And the state must come forward and justify the discrimination on the basis of non-discriminatory, less restrictive means of achieving the same objective. And under that standard, and I'm perfectly comfortable with that standard, because there's no doubt that what we're talking about here is rank discrimination on the basis of economic commerce. Breyer. It also says in Granholm that the 21st Amendment grants the States virtually complete control as to how to structure the liquor distribution system. Right. We have previously recognized that the three-tier structure is unquestionably legitimate. And then we go back into the history, and it's just history, but it is history. And we discover that the States, the vast majority, always have had rules like the Tennessee rule. And today, 34 States, apparently, according to my account, have rules just like this, except maybe not the same number of years. And so this amendment was enacted against a history. This Court has several times said we honor that history, and the history favors the other side. So what do we do about that? Well, I don't think the history does favor the other side. First of all, it's pretty clear to me that there's nowhere near 34 States that have durational residency requirements. Well, that may be, but they say you have to be a resident in some form or other. Right. But there are a lot. And my client is here, as we say in our brief, and actually both of our clients are here to say, we are not challenging the three-tier system. All we are seeking is the opportunity to compete into this market. See, the problem I have is it seems, I don't think, that you would challenge the State's residency requirement moving forward, meaning that almost all of the States require their wholesalers, distributors, and retailers to be resident in the State. Or present. Some say present. Some say resident. But pretty much, you're not challenging that. I do not challenge that. So now the challenge seems to me, why is a pre-registration or pre-licensing residency requirement of the normal length, one or two years, because I think even the dissent below thought the 14 was too, the 12 was too long, all right? But let's concentrate on the two. Let's do the severability your adversary wants. Sure. Why is that two years not reasonable, given the history of what other States have done, et cetera, et cetera? Okay. So the core principle that's embedded in here, right, is that there's a non-discrimination principle. And so adopting a durational residency requirement is, by definition, discriminating against out-of-State interests. And unless you're going to limit it just to producers, which is an irrational limitation that is, of course, never adopted with respect to any Commerce Clause analysis, we are being discriminated against. And therefore, it's the State's burden to come forward and to justify that discrimination. There is no rational basis for the two-year ban that they put in place here. The Tennessee Attorney General himself has twice looked at this ban and said it doesn't remotely serve any purpose that's designed under the 21st Amendment or dealing with alcohol or public safety or public health or anything else. It's only designed to exclude us. Except the Attorney General may represent the government, but the legislature gave a reason. And the reason it gave was because this is alcohol, we're protecting the public interest. That's fine. But that doesn't remotely explain the two-year durational residency requirement. That just explains all of the other regulations that were adopted at the same time, including the 12-year residency requirement. So it's their burden, and they should come forward not just in making statements to the legislature, they can come into court, and that's what Granholm says, look, you discriminate against out-of-state interests, that triggers a burden on the State to justify the discrimination that it's imposed, and what does it say? In this case, it said absolutely nothing. It didn't file a single affidavit. It didn't put forward any kind of witness. It didn't put on any defense whatsoever. And the reason is pretty clear. The sole purpose of this statute was, as my friend here, who represents the Retailers Association, proves beyond any question, what this is designed to do is be exclusively protectionist, which is why in some places we say that's a basis for the Court to reach the decision, because this is exclusively protectionist. But if you don't accept that, our fallback position is Granholm requires them to come forward with more than they have proposed. Breyer. The same question that is, yes, of course, but to be able to have what is called the three-seer system is unquestionably legitimate. Right. Virtually complete control over how to structure liquor distribution. A liquor distribution system employs people. And how can you structure? You can, but you could structure a liquor system involving the people who are to work there. The people who are to work there are an integral part of such a system. And therefore, given the case law and the history and the absence of any discrimination forbidden by others, this has been the law for a hundred years. Don't change it. Not all law makes that much sense. And there we are. But this law does make sense, because everything you're talking about. I mean, you would want to say their law, you want to say their law does make sense? No, what I'm saying is that if they can apply the other kinds of restrictions equally to both in-state operators and out-of-state operators, we don't have any problem with that. So if your question, to go back to your hypothetical about paint, is if they say if you're an in-state operator, you have to have green walls, and you're out-of-state operator, you have to have green walls. We have no quarrel with that. Our concern is that this is a blatantly discriminatory statute. Well, Mr. Phillips, I'd agree. If we were here on a dormant commerce clause case, it would be easy. It would be done. It would be easy. Right. But I'm stuck where Justice Breyer is. And I just want to give you another opportunity to discuss the history here. Alcohol has been treated differently than other commodities in our nation's experience, for better or worse. And we have the 21st Amendment. We have the Hublin decision, for example, in 1972 that required the use of a resident representative to sell alcohol. Yeah. And I didn't see you address that case anywhere in your brief. And I just want to give you one more shot at the history and dealing with the Wilson Act and Webb Act and those sorts of things. Thank you, Justice Breyer. I appreciate the opportunity. The case that it seems to me speaks directly to this really is Walling v. Michigan. It predates the Wilson Act. It predates Webb-Kenyon. It specifically says categorically that you cannot, States cannot discriminate against out-of-state sellers by imposing a tax on them. And I guarantee you that under the approach offered by my friends on the other side, they read the 21st Amendment to say, of course you can impose a tax on them because you're regulating the sale of alcohol. And if you regulate the sale of alcohol on a wholesaler under those circumstances, you can put a billion-dollar tax on him as long as it's within the 21st Amendment and that's constitutional. And that predates all of these things and nothing in the Wilson Act, nothing in the Section 2 of the 21st Amendment was designed to overrule Walling. And indeed, this Court said in Granholm, Granholm specifically, that that case and Scott and the third case whose name is going to escape me, Tiernan, all three survived Section 2 of the 14th Amendment. So while it is true that they can, they can, they have virtual control, virtually control, virtual control is something else, they have the ability to control the recognition of the three-tiered system. And just to go back to the history, what's the purpose of the three-tiered system? It's to avoid the tied sales arrangement that gave rise to the prohibition in the first place. You want to have three distinct levels, you know, the producers, the wholesalers, and the retailers. It's not iterative. The three-tiered system does not necessarily, in your view, entail favoritism of in-State interests? It probably has some, some advantages, but not, not, it is inherent. Isn't that the next case? I'm sorry? I'm sorry. The paragraph that Justice Breyer has referred to multiple times also has a quote from a Justice Scalia concurrence which says that the 21st Amendment empowers a state to require that all liquor be sold by an in-State wholesaler. In other words, that is interpreting the three-tiered system, I think, to entail favoritism of in-State interests. But, but see, we would regard ourselves as an in-State retailer within the meaning of that. We have satisfied every condition necessary to, to operate in-State with a presence in-State of a very large facility that can be examined, can be determined to be in compliance, can satisfy every single one of the State's best requirements. Mr. Phillips, I, I'd agree with you on that, but I would think that the next case would be, much as we've re-examined Quill, for example, and the requirement of physical presence in-State, that the next lawsuit would be that, yes, this three-tier system is, in fact, discriminatory by requiring some sort of physical presence in-State. And under the Dormant Commerce Clause jurisprudence, you have a point. You have a good point. So I, I, why isn't this just the camel's nose under the tent? Well, if only because under these circumstances, as the camel, at least, or I guess I'm the nose of the camel, that's not what I'm looking for. I think you may be, yes. I am not, that's, that's, you know, it is fundamentally at odds with my client's business model to be looking to undo the three-tier principle. But isn't the next business model just to, to try and operate as the Amazon of, of liquor? No, Amazon wants to operate as the Amazon of liquor. I said, or may at some point. No, my client operates on a, on a brick-and-mortar business model that says we're perfectly comfortable operating within the sphere of regulation that the State imposes on every in-State operator. And all we are seeking to have is not to be discriminated against. That's irrational to me. I appreciate that. The Webb-Kenyon Act, 1913, and it says you can't send liquor into a State if it's going to be possessed or sold in a, in any manner used in violation of any law of the State. Now, any, well, maybe we can work with that. But we know at the time that these States did all, or 30 or 20 or 50, have laws that said when you, in fact, structure your distribution system in our State, you have to have local residents. That's one of our employee requirements. So, when they passed Webb-Kenyon, did they mean all of them except that one? And there could have been a lot that were, in fact, violations of Dormant Commerce Clause. That's where I'm, I get all the arguments, but I'm worried about that history. Well, Justice Breyer, you know, I don't know how you can just limit it to that history, though. My guess is if you go back to the point in time of Webb-Kenyon, the Court didn't have in mind every State law that happened to be involved with the distribution of alcohol. No, but there were a lot that said you have to be a resident. But there were probably a lot, as you said earlier, that also probably discriminated on the basis of race, discriminated on the basis of ethnicity. There's other amendments every State. They took care of that. They, all the race, the women, and all these different things. They said, no, no, of course, they trump. The reason why they trump is because you can't read under the laws of the State so broadly as to mean any law. They have to be valid laws. And so you just go back, it just brings you back to the same fundamental question, Justice Breyer. Is it permissible for the State to discriminate with a durational residency requirement, not just a presence, but with a durational requirement? But to go back to Justice Gorsuch's question, I mean, I'm trying to figure out what kind of opinion we could write, Mr. Phillips, that says you win, but then when the next case comes along, and the next case is somebody that says we don't like this brick-and-mortar stuff, we don't want to have any physical presence at all, and the State is discriminating against out-of-state companies. And, you know, you've said that that's not valid, so we're entitled to do what we want to do, too. I think there are two ways you can go about this. The first one would be, I mean, you can write an opinion that just says Bacchus again. This is really protectionist and ought to be declared unconstitutional. Leave for another day the rest of those kinds of issues. The second one is, if you want to take up the question and say, you know, why is brick-and-mortar more important, well, brick-and-mortar is fully consistent with the three-tier system. And we'll leave for another day whether the three-tier system, if it in fact operates. Kagan. Well, we're leaving a lot of things for another day, but they all seem to be demanded by the principles that you're asking us to adopt. Phillips. Well, I don't think so. All I'm asking, the principles I'm asking you to adopt is to not discriminate against us under these circumstances where we are clearly exactly identically situated and where the State's interest in protecting against alcohol can be fully protected. And leave it for another day if there are other rules that are challenged to see what those rules are, how they operate, and what's the State's justification for it. Kagan. Because the hypothetical I was attempting to pose is a hypothetical where the State is acting in a discriminatory manner. And I guess what I'm asking you for is why would some kinds of discrimination be permissible and other kinds of discrimination not be permissible? Phillips. Because under certain circumstances, there may not be any less discriminatory way of achieving the State's objective. Granholm says that. Are you incorporating the Dormant Commerce Clause jurisprudence completely? Well, it's a little tricky because Granholm's a little unclear to me on that. Because, I mean, the normal Commerce Clause says if you discriminate, it's almost per se unconstitutional. Granholm didn't seem to go that far and just talked about narrow tailoring and nondiscriminatory means of achieving its objective. And I can imagine in a close case, it would make a difference. I mean, isn't that exactly. This is not a close case. I'm sorry, Your Honor. Isn't that exactly where you want us to go? Not today, of course, but tomorrow or next year. Only if I'm standing here, Your Honor. And we'll see you again. And surely, you know, the State can achieve all the regulatory interests it wants to achieve through dealing with virtual sellers from out of State just as easily as it can with physical presence sellers in State. I mean, surely that's tomorrow's argument, isn't it? Perhaps. But at least the State will have the opportunity. Just like milk, just like books. But, Justice Gorsuch, somebody is going to, at that point, presumably the State will say, this is why we can't regulate effectively. This is why we won't have the orderly market. This is why we need this restriction. But what Tennessee has never done here is ever tried to explain why a durational residency requirement of 10, 12, and why you need all stockholders to be in town, all the directors, et cetera. That's the issue before this Court. That seems to me so clearly beyond what the 21st Amendment was designed to achieve that the Court simply should declare it unconstitutional. If there are no further questions or honors. Roberts. Thank you, counsel. On two minutes, Mr. Dorefsky. Thank you, Mr. Chief Justice. Respondents offer no administrable rule that would support even the basic presence requirement that this Court recognized in Granholm was unquestionably legitimate and no account of the history. First, Respondents concede a residency requirement. A durational residency requirement follows from that. First, because states get to define what residency is. And second, because the same interests that serve a presence requirement also serve a durational, durational residency requirement. Duration facilitates background checks. It facilitates investigation and enforcement of the law because somebody who has been there for a while is more likely to have substantial assets that can be enforced that can be seized and is less likely to flee at the first sign of trouble. Once you concede that residency requirements are okay, courts shouldn't be second guessing the extent to which those very same interests are served by durational residency requirements. The whole point of the 21st Amendment was to take that out of the hands of courts. With respect to the history, Mr. Phillips referred to Walling and to Scott. Both of those were cases like Granholm and Bacchus that involved taxing out-of-state products more heavily than in-state products. That is the exception that Granholm recognized to the state's virtually complete authority. But when we're talking about purely in-state regulation, like a durational residency requirement for a liquor license, that is what the 21st Amendment is concerned with. There's no economic protectionism test that is either consistent with the history or is administrable. If the Court were to go down that road, there would be challenges to dozens of State laws, and how do we draw a line about whether 30 days is protectionist, a year is protectionist, 2 years is protectionist. At that point, the inquiry just becomes the same as any other dormant commerce clause challenge. And the one thing we know from the 21st Amendment is that alcohol is to be treated differently for dormant commerce clause purposes. Respondents' rule allow no room for that. Lastly, even if there were an economic protectionism test, for the reasons given by Judge Sutton in his dissent below, and for the reasons I said earlier, Tennessee's law satisfies the necessary level of scrutiny, which is not a searching sort of strict scrutiny, but just is there a plausible reason for the law that makes it survive. Thank you. Roberts.